IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LOUIS BATTY, | * |
| Petitioner | * |
| v. | *   Civil No.   JFM-03-335 |
| JAMES V. PEGUESE, WARDEN, et al. | * |
| Respondents | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SECOND SUPPLEMENT TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

Petitioner Louis Batty, through counsel, Michael E. Lawlor and Sicilia Chinn Englert, Lawlor & Englert, LLC, files this Second Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, augmenting the Supplement to Petition for Writ of Habeas Corpus previously filed on July 29, 2005.

### BACKGROUND

On July 29, 2005, the date Petitioner filed the Supplement to Petition for Writ of Habeas Corpus, Petitioner concurrently filed a Request for Discovery in a Habeas Corpus Case. The State filed an opposition to the request for discovery on August 5, 2005. Subsequently, in a telephone conference call, this Court granted Petitioner's Request for Discovery. Upon reviewing the State's file in *State v. Batty*, undersigned counsel found correspondence regarding Corey Gaskins's escape charge that was

relevant to Mr. Batty's *Brady* claim. On February 16, 2006, Petitioner filed a Supplemental Request for Discovery in a Habeas Corpus Case and Request for Extension of Time, further requesting that the State disclose all Baltimore County State's Attorney's Office files relating to Mr. Gaskins. Undersigned counsel also obtained the guilty plea and sentencing transcripts from Gaskins's escape case. Having reviewed the additional documents provided by the State and the transcripts from Gaskins's escape case, Petitioner files this Second Supplement augmenting the *Brady* claim raised in Petitioner's Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.

## ARGUMENT

### I.     Introduction

This Court will recall, of course, that the backdrop for Mr. Batty's *Brady* claim involves an unspoken agreement (or agreements) made by the State with its key witness in the murder trial against Mr. Batty, Corey Gaskins. At the time Mr. Gaskins would testify against Mr. Batty in the Circuit Court for Baltimore City, he would have pending against him, the following charges:

1. Two counts of armed robbery, two counts of use of a handgun in the commission of a crime of violence, and related offenses in the Circuit Court for Baltimore City;

2.  Possession of a handgun in the Circuit Court for Baltimore County; and

3.  Escape and related charges in the Circuit Court for Baltimore County.

The State maintained at Mr. Batty's trial, and in State post-conviction proceedings, that in exchange for Gaskins's testimony, it made no promises with respect to Mr. Gaskins's pending charges other than to recommend to the Court in the Baltimore City robbery case that he receive credit in the robbery case for any time in Baltimore County served on the handgun and home monitoring charges. The State introduced into evidence at Petitioner's trial a written Memorandum of Understanding dated January 22, 1996 ("Memorandum Agreement"), which stated the "deal" Mr. Gaskins's was given, in relevant part, as follows:

> He [Mr. Gaskins] has been advised by Ms. Carolyn Stark-Saxon, Assistant State's Attorney of Baltimore City, that she will recommend to any Court Mr. Gaskins comes before in Baltimore on robbery charges that are presently pending against him, that he be given credit for time served in Baltimore County on the robbery charges in Baltimore City from the date the robbery detainer was filed in Baltimore City.

Thus, notwithstanding that Mr. Gaskins was only to receive from the State credit for time served in the robbery case that he was, as a matter of law, not entitled to, he instead was given a host of gifts by the State in each and every case he had pending against him. To wit:

1. As discussed in Mr. Batty's Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, instead of receiving only credit time served, Mr. Gaskins was permitted to plead to a reduced charge of one count of robbery and was given a sentence of 7 years suspend all but 36 months with credit for 22 months served. In essence, Mr. Gaskins was permitted to plead to a reduced charge and get a time served sentence instead of facing charges that carried at least eighty (80) years in prison) (with a guideline range of 7-13 years);

2. The handgun charge in Baltimore County was stetted; and

3. As discussed more fully below, Mr. Gaskins also received a windfall plea agreement in the escape charge in Baltimore County when he was once again given a time served disposition (notwithstanding a guideline range of 4-8 years).

In consideration of the State's outrageous misconduct in this case and the State post-conviction court's failure to address the claim in a meaningful manner, Petitioner requests that this Court grant him a writ of habeas corpus. Alternatively, Petitioner requests a hearing on the *Brady* claim and an opportunity to present oral argument on the issue.

## II. The State Failed to Disclose that Gaskins Would Receive a Direct Benefit in His Pending Escape Case in Exchange for His Testimony Against Louis Batty

At the time Gaskins provided information to the State regarding the Louis Batty case, he had pending against him a charge of escape from home monitoring in Baltimore County. Gaskins's guideline range for this offense was four to eight years' incarceration. The Assistant State's Attorney prosecuting the escape case, Robin Coffin, initially offered to recommend the low end of the guidelines, four years, if Gaskins would plead guilty. Gaskins, through his defense attorney, Debra Michael, informed Ms. Coffin that Gaskins was a witness in the State's murder case against Louis Batty. The homicide detective investigating the Batty case, Detective Oscar Requir, requested, and Ms. Coffin agreed, to hold the sentencing in Gaskins's escape case sub curia until after Batty's murder trial. The following was put on the record at Gaskins's guilty plea hearing:

> MS. COFFIN: The Defendant is charged here with escape. This is a walk-off home detention. His guidelines are four to eight years. At the very beginning of the morning when I saw Ms. Michael, I said in this case I would recommend the bottom of the guidelines. She said that the Defendant had been a critical key State's witness in a murder case in Baltimore City. I spoke with the homicide detective. He has advised

5

> that the Defendant has been a tremendous benefit and they intend to use him as an ID witness in the murder trial. Based upon those representations, he requested that the sentencing be held subcuria and quite frankly, that at the time of sentencing, I would relate the Defendant's cooperation in that murder case for you to take into consideration towards his sentencing in this case.

(Transcript of Gaskins's Guilty Plea Hearing, Case no. 95-CR-0729 (escape), Tr. 4/25/95, p. 2 ) (attached as Exhibit A). Gaskins then pleaded guilty to escape on April 25, 1995. Sentencing in Gaskins's escape case was repeatedly postponed until May 14, 1996, more than one year later. There can be no dispute that sentencing for the escape was postponed solely so that Gaskins could first testify in the Batty case and afterwards reap a benefit in his own escape case. *See also* Letter from Robbin Coffin to Janet Hankin, April 27, 1995; Letter from Debra Michael to Judge Gason Turnbull, July 13, 1995 (attached as Exhibit B). Ms. Carolyn Starks-Saxon, the prosecutor in the Batty trial, was fully apprised that Gaskins's sentencing would be postponed until after he testified in the Batty case. *See* Letter from Robin Coffin to Carolyn Saxon, November 17, 1995; Letter from Robin Coffin to Carolyn Sark-Saxon, March 15, 1996 (attached as Exhibit C).

Batty's trial was held from February 12, 1996, to February 26, 1996.  Gaskins was the only witness who connected Batty with the Booker murder.  During the Batty trial, Detective Oscar Requir testified that the Memorandum Agreement dated January 22, 1996, constituted the entire agreement between the State and Gaskins.  (Tr. 2/14/96 pp. 38-41).  The agreement, however, states nothing about the escape charge.  By the time the agreement was signed on January 22, 1996, Gaskins received at least a strong implicit promise of leniency on his escape charge if he testified favorably for the State.  He had pleaded guilty on April 25, 1995, with the expectation that, after he testified at the Batty trial, he would receive a much better offer than the State's initial offer of four years' incarceration.  Not only did the State fail to disclose this direct benefit to Gaskins, Ms. Starks-Saxon sought to downplay before the jury any potential benefit Gaskins might receive on the escape charge.  During Detective Require's testimony regarding the Memorandum of Understanding, Requir testified:

BY MS. SAXON:

Q:   What date did we date this?

A:   It was dated on January 22, 1996.

Q:   by the time he signed this document, he had served all the time that he had to on the home monitor charges, is that correct?

A:   That's correct.

7

> Q: So there is essentially no problem there, is that correct?
>
> A: That's correct.

(Testimony of Det. Requir, Tr. 2/14/96 p. 41).  Gaskins, however, was not sentenced for the escape charge until several months later, on May 14, 1996.  Yet both Ms. Saxon and Det. Requir already knew at the time of Batty's trial that Gaskins would be sentenced to no additional time.  After Gaskins testified, the State delivered on its promise.  A hand-written memo to "J.T.," the prosecutor for sentencing in Gaskins's escape case, states that Gaskins "testified--<u>very well</u> . . . Let the [defendant] go–!!" (Attached as Exhibit D).  Gaskins was ultimately sentenced in his escape case to 90 days' incarceration to commence as of August 14, 1995.  (Transcript of Gaskins's Sentencing Hearing, Case no. 95-CR-0729 (escape), Tr. 5/14/96, p. 3) (attached as Exhibit E).  Gaskins was released the same day, on May 14, 1996.

### III. The State Failed to Disclose Assistance to Gaskins on His Handgun Possession Charge

Discovery materials provided by the State disclosed little regarding Gaskins's handgun possession charge.  This charge was put on the stet docket and not prosecuted.  However, Ms. Starks-Saxon was evidently consulted regarding the disposition of the handgun case. A telephone message dated September 14, 1995, from Leslie Dobres, the prosecutor on the handgun charge, to Ms. Starks-Saxon

states, "[s]he would like to know what you want her to do with the above mentioned case . . . [Re: Corey Gaskins–Possession of a handgun]" (attached as Exhibit F). Presumably after consultation with Ms. Starks-Saxon, the handgun possession case against Gaskins was put on the stet docket.

**IV.    The State Failed its Obligation to Disclose Evidence that was Material and Favorable to the Petitioner**

As discussed in the previously filed Supplement to Petition for Writ of Habeas Corpus, the State had the duty, pursuant to *Brady v. Marland*, 373 U.S. 83 (1963), to disclose evidence favorable to the accused where the evidence is material to guilt or punishment. The State's obligation to disclose includes all evidence that could be used to impeach State witnesses. *See Giglio v. United States*, 405 U.S. 150 (1972). Unquestionably, the State's promise of leniency to Gaskins, whether explicit or implicit, had to be disclosed to the defense.

Three separate cases were pending against Gaskins at the time he testified in Batty's trial: 1) possession of a handgun; 2) escape from home monitoring; and 3) robbery with a deadly weapon. The State professed that the Memorandum of Understanding contained the entire agreement between Gaskins and the State, and that no promises were made other than to bring his cooperation to the attention of the court, Gaskins expected and received extreme leniency on all three cases. For

handgun possession, the charge was dropped outright. For escape, Gaskins would have faced a minimum of four years' incarceration (the maximum penalty was ten years) but received a time served sentence of 90 days. For the armed robbery case, Gaskins was facing a minimum of 80 years incarceration, with a resulting range of 7-13 years' incarceration. The charges were were dropped down to simple robbery and he was sentenced to concurrent terms of seven years with all but 36 months suspended and credit for 22 months of time served. With good time credits, Gaskins essentially got a time served sentence.

While the outcome of Gaskins's cases speak for themselves, there is, additionally, strong evidence of Gaskins's expectations of leniency as well as evidence of the State's hand in bringing about a favorable outcome for Gaskins that was concealed from Batty's defense. All three of Gaskins's cases were hanging over his head at the time he testified in Batty's trial. Gaskins pleaded guilty to escape on April 14, 1995, and at the request of Det. Requir and Ms. Starks-Saxon, the sentencing in his case was held for more than a year, until after he testified against Batty. Gaskins's handgun possession charge was put on the stet docket, apparently after Ms. Starks-Saxon had been consulted. Finally, in the robbery case, the State kept Gaskins's case open until after he testified against Batty. As the U.S. Court of Appeals for the Fourth Circuit has recognized, "a tentative promise of leniency might

be interpreted by a witness as contingent upon the nature of his testimony. Thus, there would be a greater incentive for the witness to try to make his testimony pleasing to the prosecutor." *Campbell v. Reed*, 594 F.2d 4, 7-8 (4th Cir. 1979) (citing *Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976)).

Gaskins knew that the outcome of his pending cases depended on how he testified for the State. Gaskins indeed testified pleasingly for the State and was duly rewarded. Since, in Ms. Starks-Saxon's words, Gaskins testified "<u>very well</u>" for the State, the handgun possession charge was never prosecuted, he was sentenced to 90 days instead of four years for escape, and then sentenced essentially to time served on his two armed robbery charges. Ms. Starks-Saxon was directly responsible for the favorable outcomes in Gaskins's cases. (See Exhibit D, note to "let the defendant go" in escape case; Exhibit F, telephone message asking Ms. Starks-Saxon what to do about handgun charge).[1]

As previously argued in the Supplement to Petition for a writ of Habeas Corpus, the state post-conviction court's ruling was contrary to or an unreasonable application of both the facts adduced in this case and/or of clearly established federal

---

[1] Undersigned counsel requested, but the State was unable to provide, a copy of a memo from Ms. Starks-Saxon to Ahmet Hisim, the prosecutor for the robbery charges, regarding Gaskins's cooperation in Batty's case. Mr. Hisim references the memo during Gaskins's guilty plea hearing transcript, Tr. 11/26/96 p. 4.

law. Further, although Petitioner believes he is entitled to relief under the more stringent AEDPA standard of review, given the overwhelming evidence that the State failed to disclose the bulk of the agreement it made with Gaskins and the bundle of gifts he received from the State that was deliberately concealed from the jury, given the paucity of the State post-conviction court's ruling in this case on the *Brady* claim, no deference is due that court's finding.[2]

Finally, although Petitioner believes the Court has adequate information in the record at the current time to grant relief on this issue, Petitioner would welcome the

---

[2] This Court has previously recognized as such when it wrote in its Memorandum and Order dated February 14, 2005 that "the summary rejection in one sentence by the post-conviction court of the prosecutorial misconduct claim provides an inadequate basis for determining whether that court's finding was contrary to, or involved an unreasonable application of, clearly established federal law." Memorandum and Order at p. 26.

opportunity to present evidence at a hearing[3] on this matter and/or to have oral argument presented to the Court.[4]

## CONCLUSION

For the foregoing reasons, as well as those previously submitted in the Supplement to Petition for Writ of Habeas Corpus and in Mr. Batty's *pro se* pleadings, a writ of habeas corpus is required in this case.

Respectfully submitted,

S/_____
Michael E. Lawlor
Sicilia Chinn Englert
Lawlor & Englert, LLC
6305 Ivy Lane
Suite 704
Greenbelt, Maryland 20770
301.474.3404

---

[3] An evidentiary hearing is **required** if (1) the Petition alleges facts that, if proved, entitle the Petitioner to Relief; (2) the fact-based claims survive summary dismissal because they are not "palpably incredible;" and (3) for reasons not attributable to Petitioner, the factual claims were not the subject to a full and fair state court hearing **or** if a hearing was held, the state court did not make adequate and controlling factual findings. James S. Liebman and Randy Hertz, Federal Habeas Corpus Practice and Procedure, 892-95 (5th ed. 2005). As discussed, and as this Court noted, the State court's findings are non-existent on this issue. Of course, aside from an evidentiary hearing on the *Brady* issue, Petitioner will be requesting a hearing on the issue of his actual innocence at such time the Court considers any claims in his Petition that may be defaulted, if this case reaches that point.

[4] The Court also recognized in its Memorandum and Order dated February 14, 2005 that the record of the State proceedings was devoid of testimony from the prosecutor and the lead detective in this case. Memorandum and Order at p. 26 n.15.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of July, 2006, a copy of the foregoing Second Supplement was mailed, postage prepaid, to Edward J. Kelly, Esquire, Office of the Attorney General, Criminal Appeals Division, 200 Saint Paul Place, Baltimore, Maryland 21202.

S/_____
Michael E. Lawlor