IN THE CIRCUIT COURT
FOR BALTIMORE COUNTY, MARYLAND

**STATE OF MARYLAND**

**VERSUS**            CASE No. 95-CR-0729

**COREY GASKINS**

_____/   April 25, 1995

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS

BEFORE: THE HONORABLE **JOHN GRASON TURNBULL, II,**
ASSOCIATE JUDGE
Statement of Facts

APPEARANCES:

On Behalf of the State:
   ROBIN COFFIN, ASSISTANT STATE'S ATTORNEY

On Behalf of the Defendant:
   DEBORAH MICHAEL, ASSISTANT PUBLIC DEFENDER

REPORTED BY:
Kathleen Papesh
Official Reporter

2

1　　　　　　　　　　P R O C E E D I N G S

2　　　　　　　　　　　*　　*　　*　　*

3　　　　　　MS. COFFIN: Robin Coffin on behalf of the

4　State. State versus Corey Gaskins, at 95-CR-0729.

5　Your Honor, there is a portion of our plea negotiations

6　that I would like to put on the record at the bench.

7　　　　　　THE COURT: Sure.

8　　　　　　(At which time Counsel approached the bench

9　and the following ensued:

10　　　　　MS. COFFIN: The Defendant is charged here

11　with escape. This is a walk-off of home detention.

12　His guidelines are four to eight years. At the very

13　beginning of the morning when I saw Ms. Michael, I said

14　in this case I would recommend the bottom of the

15　guidelines. She then said that the Defendant had been

16　a critical key State's witness in a murder case in

17　Baltimore City. I spoke with the homicide detective.

18　He has advised that the Defendant has been a tremendous

19　benefit and they intend to use him as an ID witness in

20　the murder trial. Based upon those representations, he

21　requested that the sentencing be held subcuria and

22　quite frankly, that at the time of sentencing, I would

23　relate the Defendant's cooperation in that murder case

24　for you to take into consideration towards his

25　sentencing in this case.

3

```
 1            THE COURT:  Okay.
 2            MS. COFFIN:  I had already recommended the
 3   bottom of the guidelines prior to knowing that he was
 4   indeed a murder witness.
 5            THE COURT:  Okay.
 6            MS. MICHAEL:  That is correct.  I am free to
 7   argue based on all of the facts and circumstances.
 8            THE COURT:  Do you have a trial date?
 9            MS. COFFIN:  No.
10            DEFENDANT:  May 2.
11            THE COURT:  Okay.
12            MS. COFFIN:  I did ask the homicide detective
13   to contact me when the trial date was over so that we
14   could set this in.
15            THE COURT:  He is in Baltimore County
16   Detention Center?
17            MS. MICHAEL:  Yes.  He is still serving a
18   sentence that he walked off home detention.
19            THE COURT:  The Court will go along with that.
20            (Counsel and the Defendant returned to trial
21   table)
22            THE COURT:  How old are you, Mr. Gaskins?
23       A.   32.
24            THE COURT:  You can read and write?
25       A.   Yes, sir.
```

1           THE COURT: You are going on a not guilty
2  agreement statement of facts to the escape charge. You
3  heard the plea agreement at the bench. You give up the
4  right to a jury trial. A jury is twelve people chosen
5  at random in the community. You would have a right to
6  participate in the selection of those jurors. Any
7  verdict they render must be unanimous and they must
8  find you guilty beyond a reasonable doubt and to a
9  moral certainty.
10          Do you understand what a jury is?
11     A.   Yes, sir.
12          THE COURT: Do you understand you are waiving
13 that right?
14     A.   Yes, sir.
15          THE COURT: You also give up the right to
16 require the State to produce witnesses and you give up
17 the right to confront them and cross-examine them.
18          Do you understand that?
19     A.   Yes.
20          THE COURT: Has anyone made you any threats or
21 promises to get you to proceed that way?
22     A.   No.
23          THE COURT: Have a seat. The Court is
24 satisfied his waiver is knowingly made.
25          Ms. Coffin.

1       MS. COFFIN: Your Honor, on September 19,
2   1995, the Defendant was legally committed to Home
3   Detention. The Home Detention was monitored by the
4   Detention Center lcoated on Kenilworth Drive. Corey
5   Gaskins was to notify the Home Detention Unit when he
6   was to leave his home. At 8:30 a.m., the Defendant
7   called. He advised that he had quit his employment at
8   the Turf Inn and he had another job interview on
9   Clinton Street. At approximately 5:30 p.m., Corey
10  Gaskins received a no compliance, which was a
11  non-picture as a result of Home Detention checking on
12  him. Again, a no picture appeared at 6:00 in the
13  evening.
14      At that time Officer Pidello (phonetic)
15  contacted the home of Corey Gaskins and spoke with his
16  grandmother, Mary Taylor, who stated she had not heard
17  from Corey when she left the house. Still by 7:30, the
18  Defendant had not returned. There was a no picture.
19  The officer then went to the home for a physical
20  search. The Defendant was nowhere to be found. As of
21  11:00 in the evening, the Defendant's whereabouts were
22  unknown. He had been properly sentenced there to the
23  Home Detention on July 2, 1994 by Judge Bollinger for
24  theft for a period of one year recommending both work
25  release and home detention.

6

1      At no time did the Defendant have permission
2 to leave his home without permission. That would be
3 the State's case.
4      MS. MICHAEL: I have nothing to add.
5      THE COURT: The statement of facts is
6 sufficient to convict the Defendant of the escape. The
7 Court will hold disposition subcuria and reset it after
8 being contacted by Counsel. He has ten days from today
9 to file a motion for a new trial. Balance of his
10 rights will run from the date of disposition.
11           *   *   *   *