IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LOUIS BATTY, | * |
| Petitioner | * |
| v. | *   Civil No.   JFM-03-335 |
| JAMES V. PEGUESE, WARDEN, et al. | * |
| Respondents | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**PETITIONER'S REPLY TO RESPONDENTS' RESPONSE TO
SUPPLEMENTAL PETITIONS FOR WRIT OF HABEAS CORPUS**

Petitioner Louis Batty, through counsel, Michael E. Lawlor and Sicilia Chinn Englert, Lawlor & Englert, LLC, files this Reply to the Respondents' Response to Mr. Batty's Supplemental Petitions for Habeas Corpus Relief.

**I.   THIS COURT CAN AND SHOULD REACH THE MERITS OF PETITIONER'S CLAIM THAT THE STATE FAILED TO DISCLOSE THE DEAL THEY MADE WITH GASKINS PERTAINING TO HIS ESCAPE CHARGE OR HIS HANDGUN CHARGE**

Although the State failed to disclose the agreement it had with Gaskins regarding his escape charge and his handgun charge, and notwithstanding that the State affirmatively advised the jury and the State court during Petitioner's trial and during Petitioner's post-conviction proceeding, respectively, that no deals existed with Gaskins (other than the narrow (and false) information about the robbery case

that was revealed), Respondents now seek to have Petitioner's *Brady* claim declared defaulted. Since Petitioner can, however, show cause and prejudice for his failure to raise this portion of the *Brady* claim in State court, this Court can and should reach the merits of the claim

Where a petitioner has failed to make his claim in state court, he is still entitled to federal habeas relief (a) when there is cause and prejudice for the failure to raise the claim in state court; or (b) when the default would lead to a fundamental miscarriage of justice. *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006). The Supreme Court has "explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321(1995).

### 1. Cause and prejudice.

#### a. Cause.

The cause for Petitioner's' procedural default is straightforward. Petitioner failed to raise this claim in state court because he did not know of the extent prosecution's deal with Gaskins. When Petitioner made specific demands about the nature of the agreement with Gaskins prior to trial, the State lied. When Petitioner raised the claim again during State post-conviction proceedings, the State lied. The "failure" of Petitioner to raise the claim pertaining to a *Brady* claim pertaining to the escape charge was due exclusively to the false representations repeatedly made by the

State, relied on by Petitioner. The *only* reason the information came to light was this Court's granting of Petitioner's request for discovery during these habeas proceedings.

"In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)(citation and internal quotes omitted)

The law presumes that prosecutors have "fully discharged their official duties," and allows parties to act on that presumption. *Strickler v. Greene*, 527 U.S. 263, 286-87 (1999). For this reason, it is not incumbent upon the prisoner to discover exculpatory evidence withheld by the State and its agents; rather, it is the State's duty to disclose such evidence in the first instance. "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). *See also id.,* at 695 ("Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed."). A petitioner's failure to discover *Brady* claims is therefore excused absent reasonable notice the evidence has been withheld. *Id.* at 692-94.

In *Strickler*, the Supreme Court addressed the very issue confronting the Court in this case. In that case, the Court held that the petitioner had cause for not raising in state court his claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Relying on the prosecution's "open file policy" under which he was to receive all of the evidence in the prosecutor's files, defense counsel had not filed a pretrial motion to obtain exculpatory evidence. The prosecution failed to turn over notes of interviews with and correspondence from a State witness which cast doubt on the testimony given by the witness at trial. When new defense counsel claimed in a state habeas proceeding that the petitioner had received ineffective assistance from his trial counsel because of their failure to file a *Brady* motion, the State successfully defended on the ground that no such motion was necessary because, under its open file policy, trial counsel "were voluntarily given full disclosure of everything known to the government." *Strickler*, 527 U.S. at 287 (internal citations omitted). It was not until the court in the federal habeas proceeding entered an order of production that the petitioner's counsel learned of the exculpatory notes and correspondence and made his *Brady* claim.[1]

---

[1] In this case, Maryland Rule 4-263 mandates production of all *Brady* material, without request. Moreover, Petitioner's trial counsel made pointed requests for the nature and extent of any deal with Gaskins. See Exhibit C, attached to Petitioner's First Habeas Supplement. Also, as in *Strickler*, the extent of the State's deal with Gaskins became clear only after this Court granted discovery.

In ruling that the petitioner had established "cause" for not raising his *Brady* claim in state court, the Court, relying on the presumption that prosecutors discharge their official duties, held that defense counsel was not required to assert Constitutional error on the basis of a mere suspicion of a prosecutorial misstep. The Court stated that:

> The presumption, well established by tradition and experience, that prosecutors have fully discharged their official duties . . . is inconsistent with the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred.

Id. 527 U.S. at 286 (internal citation omitted). In the present case, Petitioner's prior counsel were not faced with a "prosecutorial misstep." Rather, they were faced with an intentional misrepresentation, and that intentional misrepresentation was cause for not raising Petitioner's due process claim in state court. *See Crivens v. Roth*, 172 F.3d 991, 995-96 (7th Cir. 1999) ("[w]e will not penalize [petitioner] for presenting an issue to us that he was unable to present to the state courts because of the state's misconduct"). *See also Hudson v. Whitley*, 979 F.2d 1058 (5th Cir. 1992), in which the court held that the state's failure to disclose *Brady* material constituted cause:

> Regardless of the diligence and reasonableness [petitioner] utilized in his prior habeas petitions, external impediments existed . . . . Crucial factors external to his defense, the reasonable unavailability of the factual basis for the claim as well as government interference (by the state's nonfeasance), prevented him from discovering the claim he now

raises.

Id. at 1064 (citation and internal quotes omitted).

Without reciting again the State's misrepresentations of the Gaskins' deal, Petitioner refers the Court to the following:

    a.  Gaskins' testimony at trial, in which he denies having any deal with the State save for credit for time served. See Petitioner's First Habeas Supplement at pp. 18-21;

    b.  Detective Requer's testimony at trial, in which he stated, among other things, that "[t]he reason we did that was to make it perfectly clear to you and the Judge and everything our agreement with him, and that's why we reduced it to writing, so there's no mistake what we agreed to." See Petitioner's First Habeas Supplement at pp. 16-18, 22.

    c.  Carolyn Stark Saxon's statements to the State court at Petitioner's post-conviction hearing (reprinted by Respondents at pp. 6-9 of their Response to Supplemental Petitions for Writ of Habeas Corpus (hereinafter Supplemental Response)), where she advised the court: "And I told him that we would tell the court whoever was the judge when he had the robbery charges that he had testified for us in the murder case, but that's it. **Nothing more, nothing less.**" Id. at 8 (emphasis added).

Other courts faced with similar *Brady* claims have applied *Banks* and *Strickler* and found cause and prejudice based on the State's suppression of exculpatory evidence. *See Walker v. Kelly*, 2006 WL 2460855 (4th Cir. Aug. 24, 2006) (unpublished); *Bell v. Bell* 460 F.3d 739 (6th Cir. 2006); *Monroe v. Angelone*, 323 F.3d 286, 298 & n.17 (4th Cir. 2003); *Scott v. Mullin*, 303 F.3d 1222, 1228-29 (10th Cir. 2002); *Jamison v. Collins*, 291 F.3d 380, 385-88 (6th Cir. 2002). These courts have found "cause" when a *Brady* claim, or the evidence underlying it, has gone undiscovered until federal habeas proceedings -- so long as the petitioner lacked reasonable notice of the claim in state court.

The Fourth Circuit's recent opinion in *Walker* illustrates the point. On remand from the Supreme Court for reconsideration in light of *Banks*, the court found "cause" to excuse the prisoner's failure to assert one of his *Brady* claims on direct appeal. The prosecutor had assured trial counsel and the court that all *Brady* material had been disclosed. Nevertheless, a FOIA request by federal habeas counsel revealed police reports casting substantial doubt on an eyewitness' credibility. The State argued that Walker did not *reasonably* rely on the prosecutor's assurances, was on notice that undisclosed evidence impeaching the witness might exist, and could have undertaken the same FOIA request as habeas counsel. The court squarely rejected the those arguments, noting that the "cause analysis focuses on prosecutorial

misconduct, not on the defendant's diligence." 2006 WL 2460855, at *6. The question was not whether Walker *could* have developed the evidence in state court and asserted the claim on appeal, but whether he reasonably took the State at its word. *Id.*

*Bell*, *Monroe*, *Scott* and *Jamison* likewise confirm that defendants may presume prosecutors have "fully discharged their official duties." *Strickler*, 527 U.S. at 286-87. When such defendants later unearth *Brady* evidence on habeas review, the possibility that the evidence "could" or "might" have been developed in state court will not preclude the claim's development in federal court. *See Bell*, 460 F.3d at 748 (prosecution gave no evidence in response to *Brady* request, thereby excusing defendant's failure to assert claim of informal deal between prosecution and witness); *Jamison*, 291 F.3d at 385-88 (prosecutor said he disclosed all exculpatory evidence, thereby excusing prisoner from discovering evidence of alternative suspects and impeachment materials outside scope of prosecutor's "homicide book"); *Monroe*, 323 F.3d at 298 & n.17 ("Because Monroe was entitled 'to rely on ... the presumption that the prosecutor would fully perform his duty to disclose all exculpatory materials,' she did not default her right to rely on the material first obtained in federal habeas discovery by failing to bring it to the attention of the state courts.").

Respondents' latest contentions in this Court appear to amount to little more

than curious word games.  As has been previously noted, to prevail on a *Brady* violation, Petitioner must show that:

> (1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been suppressed by the state, whether willfully or inadvertently; and (3) it must be material.

*Spicer v. Roxbury*, 194 F.3d 547, 555 (4th Cir. 1999).  In the instant case, it is beyond dispute that favorable consideration given to Gaskins in exchange for his testimony would have impeachment value.  The Court has in its possession the Memorandum of Understanding in which the State confines any agreement with Gaskins to his armed robbery case.  As cited, all parties involved in the agreement – Gaskins, Requer and Stark-Saxon, denied that their deal went beyond the four corners of the Memorandum of Understanding.  Now, faced with overwhelming evidence that the State's deal with Gaskins clearly involved the escape charge (as evidenced in Petitioners' Second Habeas Supplement), Respondents argue that "the Batty defense knew of Gaskins's Baltimore County escape charge and that Gaskins requested assistance on this charge in exchange for his statement implicating Batty." Supplemental Response at p. 16.

First, simply because Petitioner's counsel *argued* that their was a deal does not mean that the State disclosed that a deal was in place or that the jury would have

found that a deal was in place. Further, the issue is whether the State suppressed this deal. Petitioner has claimed that a deal existed and that the State did not disclose it. Respondents' mealy-mouthed Supplemental Response falls quite short of a denial of Petitioner's contention, and attempts to artfully dance around the issue. All of which begs the simple question: Do Respondents deny that a deal was in place with Gaskins vis-a-vis his escape and handgun offenses? And if they do not deny the existence of such a deal (or deals), do they deny failing to disclose this to the defense? Perhaps the Court will read more clearly Respondents' latest submission but it appears to Petitioner that the State's 30 page pleading fails to answer these very simple questions.

Here, the State's misrepresentation about the nature of the deal with Gaskins "impeded counsel's efforts to raise the claim in state court." The factual basis for the instant *Brady* claim was kept from him by the interference (the misrepresentations) of the State. The very misrepresentation that gives rise to Petitioner's claim impeded the efforts of his counsel to raise the claim; it made the factual basis for the claim unavailable to Petitioner.

Mr. Batty has, and at an evidentiary hearing can, establish cause for his failure to raise his due process claim in state court.

### b. Prejudice.

The prejudice to Petitioner as a result of the prosecutorial misrepresentation is clear in this case and has been argued previously and need not be repeated here. As Petitioner argued prior, the State's case here was weak and non-existent short of Gaskins' testimony. See Petitioner's First Habeas Supplement at pp. 31-36.

In *Strickler*, the Court equated the materiality test of *Brady* with the "prejudice" prong of the cause and prejudice test. "[U]nless those documents were 'material' for *Brady* purposes, their suppression did not give rise to sufficient prejudice to overcome the procedural default." *Strickler*, 527 U.S. at 282.

*Banks* holds that if evidence is "material for Brady purposes," its suppression creates sufficient prejudice to overcome procedural default  540 U.S. at 698. Materiality is satisfied when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 698; *see Kyles v. Whitley*, 514 U.S. 419, 435 (1995). The defendant need not show that "disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal;" nor can the conviction be upheld simply because sufficient evidence might remain to support it. *Id.* at 434-435. Under this standard, Petitioner has plainly demonstrated prejudice.

*Banks* found prejudice when the prosecution suppressed evidence that Farr, the

key witness during the penalty phase of Banks' trial, was a paid informant. The Court noted that Farr's testimony was "the centerpiece" of the prosecution's case for the death penalty; the prosecution relied heavily on Farr's testimony, repeating it three times during the penalty phase. *Banks*, 540 U.S. at 700-701. At the same time, the withheld evidence "cast in large doubt" the veracity of Farr's testimony. *Id.* Had the jury known of Farr's paid informant status, the Court concluded, they "might well have distrusted Farr's testimony, and, insofar as it was uncorroborated, disregarded it." *Id.* at 701. The Brady violation thus created a reasonable probability of a different result as to punishment. *See id.* at 702-703.

The suppression of evidence here caused Petitioner to suffer equally serious prejudice. As in *Banks*, Gaskins' testimony was the "centerpiece" of the prosecution's case against Petitioner. There was no other witness to the crime who could identify Petitioner as having any involvement and, short of Gaskins' testimony, the State's case would not have survived MJOA.

Petitioner has, and at an evidentiary hearing can, demonstrate prejudice.

### 2. **Actual innocence**.

Actual innocence is, like cause and prejudice, a "gateway" through which a habeas petitioner may pass to have considered an otherwise barred constitutional claim. *Schlup v. Delo*, 513 U.S. 298, 315, 130 L. Ed. 2d 808, 828 (1995). To

establish the requisite probability of actual innocence, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." 513 U.S. at 327.

> In assessing the adequacy of petitioner's showing . . . the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial.

513 U.S. at 327-28. "[T]he line between innocence and guilt is drawn with reference to a reasonable doubt. . . . [T]he analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence. 513 U.S. at 328.

"It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." 513 U.S. at 329.

> [F]inally . . . the . . . standard requires a petitioner to show that it is more likely than not that "no reasonable juror" would have convicted him. The word "reasonable" in that formulation is not without meaning. It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt.

513 U.S. at 329.[2]

For the reasons previously stated, and for reasons Petitioner could demonstrate at an evidentiary hearing on this issue, it is more likely than not that no reasonable juror could conscientiously conclude that Petitioner was guilty beyond a reasonable doubt. The evidence against Petitioner is shaky

Petitioner, at an evidentiary hearing on this issue, can demonstrate his actual innocence.

## II. PETITIONER'S CLAIM REGARDING THE DEAL GIVEN TO GASKINS ON THE ROBBERY CHARGE IS NOT DEFAULTED

Respondents maintain that Petitioner has procedurally defaulted his claim concerning a *Brady* violation as to the Gaskins' armed robbery agreement. They are wrong.

The exhaustion doctrine, codified at 28 U.S.C. § 2254 (b) and (c), requires that "federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Rose v. Lundy, 455 U.S. 509, 515 (1982). The "doctrine is principally designed to protect the state courts' role in the

---

[2] The *Schlup* "more likely than not" standard is applicable to this case. As noted above, in cases where the petitioner "has failed to develop the factual basis of a claim in State court proceedings" he must satisfy a "clear and convincing" test under 28 U.S.C. §2254(e)(2). Petitioner, however, did not "fail" to develop the basis for his claim and therefore the *Schlup* test is applicable.

enforcement of federal law and prevent disruption of state judicial proceedings." Id. at 518.  To satisfy the doctrine, a petitioner must fairly present a constitutional claim to the State courts.  Picard v. Connor, 404 U.S. 270, 275 (1971).  The Supreme Court has noted that "fair presentation" of an issue requires that "a state prisoner . . . present the state courts with the same claim he urges upon the federal courts." Id. at 276.

In order to exhaust a claim for federal habeas review, "the petitioner must apprise the state court system of the facts and legal theory upon which the petitioner bases his assertion.'" S. Liebman and Randy Hertz, Federal Habeas Corpus Practice and Procedure, 863 (3d ed. 1998) (quoting Galtieri v. Wainwright 582 F.2d 348, 353 (5th Cir. 1978) (en banc)).  This requires that the petitioner present to the federal court what is in substance the same claim that was presented to the State court.  Liebman and Hertz, supra at 863; *Vasquex v. Hillery*, 474 U.S. 254, 258 (1986); *Spiegel v. Sandstrom*, 637 F.2d 405, 407 (5th Cir. 1981) ("A habeas petitioner need not spell out each syllable of his claim before the state court in order the satisfy the exhaustion requirement of §2254(b).").

Concerning Petitioner's claim that the State violated *Brady* with respect to any agreement the State had with Gaskins on his armed robbery charge, the claim was raised and argued in the State court at both the post-conviction circuit court level and before the Court of Special Appeals of Maryland.  Petitioner exhausted all available

State remedies as the issues presented herein were presented to the State courts on the same factual and legal theories. There is no procedural default on this issue and this Court should reach the merits of the claim.

Respondents' suggestion that Petitioner must submit verbatim the same factual and legal arguments in State and federal court is a complete warping of the exhaustion default rules. Petitioner did exhaust all available State remedies as to the robbery / *Brady* issue presented. Respondents' argument should be rejected.

### III.  THIS COURT SHOULD HOLD AN EVIDENTIARY HEARING IN THIS CASE

An evidentiary hearing is **required** if (1) the Petition alleges facts that, if proved, entitle the Petitioner to Relief; (2) the fact-based claims survive summary dismissal because they are not "palpably incredible;" and (3) for reasons not attributable to Petitioner, the factual claims were not the subject to a full and fair state court hearing **or** if a hearing was held, the state court did not make adequate and controlling factual findings. James S. Liebman and Randy Hertz, <u>Federal Habeas Corpus Practice and Procedure</u>, 892-95 (5th ed. 2005). As discussed, and as this Court noted, the State court's findings are non-existent on the robbery / *Brady* issue. Of course, there was no hearing in the state court on the on the escape and handgun / *Brady* issue due to the State's suppression of this evidence, thereby necessitating a

hearing in this Court, *See Holland v. Jackson*, 542 U.S. 934, (2004) (evidence that was not presented to the state court "could have been the subject of an evidentiary hearing by the District Court, but only if respondent was not at fault in failing to develop that evidence in state court. . ."). Here, the failure to develop the facts was due to the State's misrepresentations of facts and concealment of evidence and was due to no fault of Petitioner. A hearing is required in this Court on the issue (and the issue of whether cause and prejudices exists on this issue).

Petitioner will be requesting a hearing on the issue of his actual innocence at such time the Court considers any claims in his Petition that may be defaulted, if this case reaches that point.

## CONCLUSION

In a criminal trial, the State's sole duty is to seek justice, not to lie, cheat and steal their way to a conviction. In this case, the State violated the core of due process consideration by failing to disclose, even remotely, the full terms of the agreement it made with Corey Gaskins. It still refuses to do so. Had the State disclosed that which they were required, there is a reasonable probability that Petitioner would not have been convicted of murder and he would be a free man today. Instead, he has spent more than a decade incarcerated following a conviction that reeks of State misconduct. More than merely grant a writ of habeas corpus, this Court must

denounce the State's conduct in this case and free Petitioner from an unjust and illegal detention .

Given that the facts of the *Brady* claim, as to Gaskins escape and handgun charge, were not developed in the State court this Court should hold a hearing both on the procedural default issue(s) and on the merits of Petitioner's *Brady* claim.

For the foregoing reasons, as well as those previously submitted, a writ of habeas corpus is required in this case.

Respectfully submitted,

S/_____
Michael E. Lawlor
Sicilia Chinn Englert
Lawlor & Englert, LLC
6305 Ivy Lane
Suite 704
Greenbelt, Maryland 20770
301.474.3404

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2006, a copy of the foregoing Reply was mailed, postage prepaid, to Edward J. Kelly, Esquire, Office of the Attorney General, Criminal Appeals Division, 200 Saint Paul Place, Baltimore, Maryland 21202.

S/_____
Michael E. Lawlor