IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LOUIS BATTY, #507566, | * | |
| Petitioner, | * | |
| v. | * | CIVIL ACTION NO. JFM-03-335 |
| JAMES V. PEGUESE, WARDEN, et al., | * | |
| Respondents. | * | |

\* \* \* \* \*

RESPONSE IN OPPOSITION TO REQUEST FOR EVIDENTIARY HEARING

    Respondents, James V. Peguese, former Warden of the Maryland House of Correction-Annex,[1] and Douglas F. Gansler, the Attorney General of the State of Maryland, by undersigned counsel, hereby respond to the June 19, 2007, letter filed on behalf of Petitioner Louis Batty, which sets forth his position regarding the basis for holding an evidentiary hearing in this case, and also identifies the witnesses he would present at a hearing if one is ordered by this Court. Respondents read Batty's letter to state that an evidentiary hearing is necessary in this case notwithstanding his failure in state court to raise and/or present evidence supporting three currently alleged *Brady* claims. Batty further suggests that it would also be appropriate at this stage to litigate his "actual innocence" claim which apparently is based on recently discovered evidence in the form of a witness, Juanita Broadway, who apparently will state for the first time, over ten years after Batty's trial, that Batty was not at the scene of the crime when it was committed.

---

[1] The Maryland House of Correction - Annex is now known as the Jessup Correctional Institution, and the current warden of that institution is James Smith.

It can be gleaned readily from Batty's most recent letter, as well as his prior pleadings, that Batty is dissatisfied with the manner in which his state post conviction claims were investigated, presented, and/or litigated in state court. That, however, is not a basis for granting an evidentiary hearing in this Court on the two *Brady* claims that were not presented to a state court despite opportunity to do so, or the one *Brady* claim which Batty was given unrestricted opportunity to litigate in state court. Accordingly, Batty's request for an evidentiary hearing should be denied.

## FACTUAL SUMMARY

A detailed factual summary of Batty's case can be found in Respondents' prior pleadings, which Respondents incorporate by reference. *See* Paper 15 at 4-7; Paper 68 at 2-13. On December 13, 2004, Maurice "Chink" Booker was driving in the neighborhood in which he lived near the intersection of Lucille Avenue and Beaufort Avenue in Baltimore City; his six-year-old brother was in the passenger seat. Respondents' Exhibit 4 at 10, 49-50, 56, 70; Respondents' Exhibit 5 at 10. At trial, the evidence showed that two masked persons dressed in black clothing emerged from an alley near this location, and one of those individuals fired several shots into Booker's car, killing Booker. Respondents' Exhibit 8 at 127-29. Irene DeGross testified that she observed the two assailants run directly from the crime scene into the nearby home of Batty's girlfriend, Sharon Walker. Respondents' Exhibit 5 at 12, 58.

Several witnesses, including Michael Jennings, Cheron Jennings, and Larry Mankley, placed Batty near the scene of the crime at the time it occurred, and it was further adduced that Batty was wearing clothes that matched the clothing worn by Booker's assailants.

Respondents' Exhibit 6 at 75-78, 90-104, 117; Respondents' Exhibit 7 at 79-85. It was also undisputed that, on the day of the murder, Batty had visited Booker's home twice. Respondents' Exhibit 6 at 90-98; Exhibit 9 at 30-41 (closing argument). Michael Jennings stated that Batty came by the house, met with Booker, and then left in the direction of where the murder occurred. Exhibit 6 at 83. When Batty came the second time, it was soon after the shooting, and he was wearing a bullet-proof vest. Exhibit 6 at 90-98. By December 17, 1994, the lead detective, Oscar Requer, considered Batty a suspect in the case. Respondents' Exhibit 5 at 125-26.

Corey Gaskins, consistent with a prior statement he had given to the police, testified that three days after the Booker murder Batty told him that he shot and killed Booker. Exhibit 6 at 158-59. The prosecutor, Carolyn Stark-Saxon, Detective Oscar Requer, and Gaskins entered into a Memorandum of Understanding, which was disclosed to the defense, relating to Gaskins's cooperation in the case. *See* Respondents' Exhibit 20.

> **A.   An evidentiary hearing is not permitted on the two *Brady* claims that were not presented to a state court, and an evidentiary hearing is unwarranted on the one *Brady* claim that Batty was permitted to litigate fully in state court.**

The United States Supreme Court has stated that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). 28 U.S.C. § 2254(e)(2) states as follows regarding evidentiary hearings in federal habeas proceedings:

> (2)    If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -

3

>   (A) the claim relies on -
>
>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"'Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.'" *Williams*, 529 U.S. at 437 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)). If the prisoner fails to fulfill the requirement of diligently presenting claims of constitutional error to the state court in the first instance, § 2254(e)(2) prohibits an evidentiary hearing in federal court unless the statute's other stringent requirements are met. *Id*. (emphasis added).

As Batty concedes, in the present case, two of the *Brady* claims he presents in his counseled pleadings – (1) that the State failed to disclose that Gaskins would receive a direct benefit in his pending escape case in exchange for his testimony against Louis Batty and (2) that the State failed to disclose assistance to Gaskins on his handgun possession charge – were not presented to, or developed in, all of the appropriate state courts. *See* Paper No. 77 at 2. Batty excuses his failings in this regard by baldly accusing the State of hiding the basis for these claims. *Id*. at 2-5. Batty seems to suggest that, because the State held fast to its position that there was no *Brady* violation in this case, it precluded him from developing all

of his claims in state court. Batty clearly is wrong, and his reliance on *Banks v. Dretke*, 540 U.S. 668, 690-98 (2004), is misplaced. In that case, Banks was permitted to pursue in federal court a previously unraised *Brady* claim where it was discovered in federal habeas proceedings that the State, despite its promise to provide open file discovery, concealed specific exculpatory evidence, and also allowed one of its witness to testify untruthfully. *Id*. Similar circumstances do not exist here.

There is no evidence in this case of any State misconduct at trial or at post conviction proceedings, and the discovery conducted in this case has not shown otherwise. In fact, the record indicates that the discovery conducted in this Court only duplicated what was available to Batty's state post conviction counsel. The state post conviction file confirms that Batty's state post conviction counsel subpoenaed the entire State's file in Batty's case, "including but not limited to, investigative materials, interview notes, plea agreements, plea negotiation notes, state's attorney file notes, copies of subpoenas, discovery material, and all related materials." *See* Exhibit 1. Although the record does not reflect what Batty's counsel did after the subpoena was issued and served, there is no evidence that the State failed to comply with the subpoena or that the State otherwise precluded post conviction counsel from reviewing its file. Certainly, the State cannot now be blamed for Batty's failure to call Ms. Carolyn Stark Saxon, the trial prosecutor, to testify at the post conviction hearing where she was present and available to do so.[2]

Thus, despite Batty's insistence to the contrary, his state post conviction counsel

---

[2]The State actually had an additional prosecutor present in preparation for Ms. Saxon's potential testimony. *See* Transcript of April 4, 2001, at 103-04.

seemingly had access to the very same materials upon which Batty bases his newly presented *Brady* claims. The onus was on Batty to fully investigate and develop the claim to be presented to the state court. Batty cannot now blame the State for his failings in this regard, if any. In sum, Batty has failed to show cause for failing to present all of his claims in state court. *See Banks v. Dretke*, 540 at 690-98 (discussing factors to show cause for overcoming procedural default).

The reason no *Brady* claims were raised in state post conviction proceedings regarding the escape and handgun charges is obvious – none occurred. The discovery conducted in this Court only confirms this. In fact, given the circumstances, that neither Batty's trial counsel nor his post conviction counsel ever alleged any impropriety in this regard is proof enough that no impropriety occurred, much less any impropriety that prejudiced Batty's trial. *See Banks v. Dretke*, 540 U.S. at 698-703 (discussing factors to establish prejudice for overcoming procedural default); *Strickler v. Greene*, 527 U.S. 263, 295-96 (1999) (no showing of materiality/prejudice under *Brady* where petitioner failed to show that there was reasonable probability that conviction would have been different had evidence been disclosed); *see also* Paper 68 at 13-17 (discussing why Batty's defaulted *Brady* claims fail on their merits).[3]

Under the circumstances, no statutory exceptions apply to Batty's case which would

---

[3] If Batty believes his state post conviction counsel provided ineffective assistance, he can request a reopening of those proceedings on that basis. There is, however, no federal remedy for ineffective assistance of state post conviction counsel. *See Mackall v. Angelione*, 131 F.3d 442, 447-48 (4th Cir. 1997) (noting that post conviction relief is not part of the criminal proceeding itself and is not constitutionally required), *cert. denied*, 522 U.S. 1100 (1998); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (applying rule that claims of error occurring in state post conviction proceeding cannot serve as basis for habeas relief).

excuse Batty's failure to develop his current claims in state court. Thus, as to the two *Brady* claims which were not presented in state court, an evidentiary hearing is not authorized by section 2254(e). *Williams*, 529 U.S. at 437 (opining that if the prisoner fails to develop and present claims with diligence to the state court, and thereby contributes to the absence of a full and fair adjudication in state court, "§ 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met") (emphasis added); *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) ("[A] district court may not hold an evidentiary hearing on an applicant's habeas claims if the applicant 'failed to develop the factual basis of a claim' during the state court proceedings unless the applicant can establish the existence of a statutory exception."), *cert. denied*, 531 U.S. 1095 (2001); *Robinson v. Polk*, 438 F.3d 350, 367 (4th Cir.) (same), *rehearing en banc denied*, 444 F.3d 225, *cert. denied*, 127 S.Ct. 514 (2006).[4]

As to the one claim which is properly before this Court – that the State failed to disclose that, in exchange for his testimony against Batty, Gaskins would not be charged in connection with a robbery committed in Baltimore City on December 24, 1994 – the state court record shows that this claim was fully developed and litigated in state court, and thus, a hearing on this claim is unwarranted. In fact, at the three-day state post conviction hearing, five witnesses, including Batty's trial counsel, Assistant Public Defender Angela Shelton,

---

[4]A state prisoner seeking federal habeas corpus relief must first present each of his claims to the state courts having jurisdiction to consider them. *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 29 (2004). If this Court believes there was good cause for Batty's failure to exhaust these claims and that the claims are not plainly meritless, the appropriate course would be to stay this case while Batty exhausts those claims in state court, *see Rhines v. Weber*, 544 U.S. 269, 276-79 (2005) (discussing the propriety of staying a "mixed" habeas petition), not to hold evidentiary proceedings in this Court.

and Gaskins's trial counsel on the robbery charges, Mr. Michael Montemarano, were called to testify on Batty's behalf. In his recent letter, Batty states that evidentiary proceedings are necessary to call the following witnesses: former Baltimore City Assistant State's Attorney Carolyn Stark Saxon, Baltimore County Assistant State's Attorney Robin Coffin, Assistant Public Defender Debra Michael, Detective Oscar Requer, Ms. Shelton, and Juanita Broadway. Notably, however, there is no suggestion by Batty was prevented from presenting these witnesses at the state post conviction hearing.

In fact, as noted above, Ms. Saxon was present at the state post conviction hearing and was not called by Batty despite opportunity to do so. Ms. Shelton, as noted above, actually testified at the state post conviction hearing, and there is no basis to reproduce her testimony now. Batty offers no reason why Detective Requer, Ms. Coffin, or Ms. Michael could not have been called as witnesses in these proceedings.[5] Rather, it is clear that these witnesses did not testify because Batty simply chose not to call them, which was a strategic decision by post conviction counsel that is not subject to review in this Court. Batty is simply wrong to suggest that he was precluded from developing any aspect of his claims in state court, much less that the record before this Court is insufficient to reach a determination on his

---

[5]The record refutes the notion that the State hid evidence relating to these witnesses. Detective Requer's role in the case was well known, as he testified at trial. Moreover, at the state post conviction hearing, a letter from Robin Coffin to Carolyn Saxon dated November 17, 1995, was admitted as State's Exhibit 2, and a letter from Debra Michael to Michael Montemanaro dated August 2, 1996, which, among other things, detailed Ms. Michael's conversation with Ms. Coffin, was admitted as State's Exhibit 3. *See* Transcript of April 4, 2001, at 118, 125-26. Ms. Broadway, nicknamed "Hawaii," was mentioned at trial and during post conviction proceedings. *See, e.g.,* Exhibit 6 at 117-18; Transcript of April 4, 2001, at 44-49, 70-72, 98-102. Thus, Batty was aware of these potential witnesses during the relevant state proceedings.

properly presented claim. *See Fisher*, 215 F.3d at 454-55 (considering, in determining the propriety of the denial of request for evidentiary hearing, that the petitioner had "asserted that the facts which he was afforded the opportunity to develop during the state hearing are sufficient to demonstrate that he received constitutionally ineffective assistance of counsel").

In sum, the threshold factors warranting an evidentiary hearing in this Court have not been met in this case. There is no indication that Petitioner Batty was afforded anything less than a full and fair opportunity in the Maryland state courts in which to pursue all of his claims, and there is no basis for concluding that he was in any way prevented in his efforts to substantiate his claims. *Fisher*, 215 F.3d at 455 (considering, in determining the propriety of the denial of request for evidentiary hearing, that there was no indication that petitioner was afforded anything less than a full and fair hearing in state court and that petitioner had not alleged that he was in any way prevented in his efforts to substantiate his claims). Rather, given the breadth of the state post conviction trial proceedings in this case, the holding of additional evidentiary proceedings in this Court is not only unnecessary, but would contravene the overriding comity interests established by the AEDPA.

Ultimately, for the reasons expressed by Respondents in their prior pleadings, this Court should deny Batty the relief he seeks. Factual determinations by the state court, both express and implied, are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Lenz v. Washington,* 444 F.3d 295, 300 (4th Cir.), *cert. denied,* __ U.S. __, 127 S.Ct. 10 (2006); *Campbell v. Vaughn*, 209 F.3d 280, 286-90 (3d Cir.2000), *cert. denied*, 531 U.S. 1084 (2001). Batty has not rebutted the state post conviction court's conclusion that there was no credible evidence of prosecutorial misconduct by clear and convincing evidence. *Id.* As

9

noted above and in prior pleadings, it was Batty's position in state court that the State promised to <u>drop</u> the armed robbery charges against Gaskins in exchange for his testimony, and the record confirmed conclusively that the State made no such promise. *See* Paper No. 68 at 17-23. The state post conviction court's ruling denying Batty's *Brady* claim was a correct ruling based on the evidence and argument presented in state court, constituted a reasonable application of prevailing Supreme Court law, and therefore, survives scrutiny under 28 U.S.C. § 2254(d).

**B.    The "actual innocence" claim.**

Batty has lumped into his request for an evidentiary hearing, matters related to what he refers to as his "actual innocence" claim, which is based on newly discovered evidence, apparently in the form of an affidavit of Ms. Juanita Broadway, wherein Ms. Broadway avers that Batty was not at the scene of the crime when it occurred. The affidavit of Ms. Broadway has not been provided to Respondents.

As a threshold matter, Batty fails to explain why this evidence is being presented for the first time in this Court, and not state court, over ten years after his convictions were rendered. Furthermore, under *Schlup v. Delo*, 513 U.S. 298, 237 (1995), actual innocence is not a stand-alone claim, but is instead a gateway through which a petitioner must pass in order to have otherwise barred constitutional claims considered. As noted in *Schlup*: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324.

Batty's "newly discovered" evidence does not meet this criteria. Rather, it appears that long after his convictions were secured and affirmed, Batty has convinced a friend or acquaintance to reproduce her recollection of past events, which amounts to an inexplicably belated account that does nothing to negate the State's case, as it seemingly still places Batty in the vicinity of the crime when it occurred. Moreover, Ms. Broadway's purported testimony that Batty was with her at the corner of Virginia Avenue and Reisterstown Road when the shooting occurred, *see* Paper 77 at 6, conflicts with Batty's own post conviction testimony that he was at the corner of Lucille Avenue and Reisterstown Road when the shooting occurred, *see* Transcript of April 4, 2001, at 29-30, 70-73, which is significantly closer to the shooting, *see* Paper 39 at Petitioner's Exhibit A. Certainly, this Court could determine without more that such highly suspect evidence produced so long after Batty's trial concluded does not meet the threshold for establishing actual innocence under *Schlup*. Otherwise, full briefing on the issue would be appropriate before determining whether the issue raised by Batty deserves additional consideration by this Court.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Respondents' prior pleadings, this Court should deny Batty habeas relief without holding an evidentiary hearing.

Respectfully submitted,

_____/s/_____
EDWARD J. KELLEY
Assistant Attorney General
Bar No. 27039

Office of the Attorney General
Criminal Appeals Division
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-7964 (telephone)
(410) 576-6475 (telecopier)

Counsel for Respondents


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of July, 2007, a copy of the foregoing Response in Opposition to Request for Evidentiary Hearing, which was electronically filed on July 3, 2007, was mailed, first class, postage prepaid, to Michael E. Lawlor, Esquire, Lawlor & Englert, LLC, 6305 Ivy Lane, Suite 704, Greenbelt, MD 20770.

_____/s/_____
EDWARD J. KELLEY
Assistant Attorney General