UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

December 4, 2007

Memo To Counsel Re: Louis Batty v. James V. Peguese, Warden, et al.
Civil No. JFM-03-335

Dear Counsel:

I find this case to be quite troubling because it appears rather clear from the record before me that a *Brady* violation occurred during Louis Batty's trial for murder.

At the least, the State failed to disclose that Corey Gaskins' sentencing in the Baltimore County escape case had been postponed pending Batty's trial at the request of Detective Owen Requer so "that at the time of sentencing, . . . [the Baltimore County prosecutor] would relate . . . [Gaskins'] cooperation in that murder case for . . . [the judge] to take into consideration towards his sentencing in this case." (Transcript of Gaskins' Guilty Plea Hearing, Case No. 95-CR-0729, 4/25/95, at 2.) Requer's request was contrary to the Memorandum of Understanding dated January 22, 1996, entered into between Requer, Carolyn Starks-Saxon (the Assistant State's Attorney for Baltimore City who prosecuted Batty), and Gaskins, which was referenced in Gaskins' testimony at Batty's trial. The MOU, which purported to "constitute the entire agreement" between the signatories, made no mention whatsoever of the fact that Gaskins' cooperation against Batty was to be brought to the attention of the Baltimore County judge who was to sentence him on the escape charge. Further, the fact that Requer had asked (through the Baltimore County prosecutor) that Gaskins' sentencing on the escape charge be postponed was entirely inconsistent with his own testimony at Batty's trial that by the time Gaskins signed the MOU, "he had served all the time that he had to on the home monitor [Baltimore County escape] charges." (Transcript of Batty Trial, 2/14/96, at 41.)[1]

[1] In addition to the State's failure to disclose the agreement regarding Gaskins' escape charge, evidence uncovered during the most recent discovery suggests the State may have further failed to disclose a deal regarding Gaskins' County handgun charge. Although the State revealed at trial that the handgun charge had been stetted, it did not disclose, as has

I recognize that Batty did not adequately present to the State post-conviction court evidence concerning the disposition of Gaskins' Baltimore County escape case. However, if (as I believe is clear) a *Brady* violation occurred, Batty has established good cause for his failure to do so. It is well established that in order to overcome a procedural default, a petitioner must show cause for, and actual prejudice resulting from, the default. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006).[2] As to the "actual prejudice" element, Gaskins' apparent agreement with the State concerning the Baltimore County escape charge directly bore upon his credibility. Because he was the only witness who identified Batty as the murderer, the State's failure to disclose the information was thus self-evidently material and prejudicial. As to the "cause" element, the law is clear that a defendant may rely upon the State's representations (both at trial and during State post-conviction proceedings) that no *Brady* violations have occurred, and that misrepresentations made by the State on this issue constitute cause for a defendant's failure to pursue a *Brady* claim in the State court proceedings. *See Banks v. Dretke*, 540 U.S. 668, 695-98 (2004). Here, the State denied both at trial and in the State habeas proceeding that any *Brady* violation had occurred. In light of the fact that the record before me appears to establish that Detective Requer and Ms. Starks-Saxon (who represented the State both at Batty's trial and during his State habeas proceeding) knew that Gaskins' sentencing on the Baltimore County escape charge was being deferred pending the outcome of Batty's trial, these denials seem to have been false.[3]

---

later become apparent, that the charges were stetted at the Batty prosecution's request.

[2] The other ground for excusing a procedural default is that failure to consider a claim will amount to "a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495 (1986). This exception has been construed to cover only situations where a petitioner has presented strong credible evidence of actual innocence. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). I am not persuaded that Batty has provided such evidence here.

[3] The *Banks* Court held that a petitioner's "cause" argument is even stronger where the State knowingly failed to correct false trial testimony regarding the alleged violation. *Banks*, 540 U.S. at 694. As mentioned earlier in the text, it appears that during Batty's trial Requer wrongly testified that at the time Gaskins signed the MOU, he had already served his time on the Baltimore County escape charge. Moreover, Gaskins testified that the MOU contained the entirety of his deal with the State and that the robbery charges were not related to his agreement to testify. (Transcript of Batty Trial, 2/14/96, at 161-62, 164-65; *id.* 2/16/96, at 16-18.) The State elicited and relied on those inaccurate statements.

Under these circumstances the appropriate course for me to follow may be to issue a formal opinion granting Batty the relief he seeks.[4] For two reasons, however, I am reluctant to issue such an opinion without first consulting with counsel. First, in setting a hearing in this case the issue I posed for argument was whether I should grant Batty a non-evidentiary hearing. Out of respect for the State, I do not believe that I should find a *Brady* violation without holding a hearing (evidentiary or non-evidentiary, at the State's option) on the merits of the claim. Second, although the occurrence of the *Brady* violation now seems clear to me, that clarity has come only after – due to the commendable diligence of Batty's counsel – the mists lifted and the post-conviction record was made whole by inclusion of relevant documents from the Baltimore County escape proceeding. Counsel for the State may be in the same position as I now that a complete record has been established and the issues clarified by detailed briefing and oral argument. In turn, the State may likewise have concluded that, despite earlier contentions to the contrary, a *Brady* violation did occur. If that is so, I have no doubt the State might well decide that continued incarceration of Batty on the murder charge would be unjust.

Accordingly, rather than issue a formal opinion at this time, I will meet with counsel to determine how next to proceed. To that end, a scheduling conference will be held at 9:30 a.m. on December 20, 2007. I ask counsel for the State to initiate the call.

Very truly yours,

/s/

J. Frederick Motz
United States District Judge

---

[4] Respondents have suggested that if I am of the view that a *Brady* violation may have occurred, I should direct Batty to file a motion under Maryland Code, Criminal Procedure Section 7-104 to reopen his State post-conviction proceeding on the ground that reopening is "in the interests of justice." Md. Code Ann., Crim. Pro. § 7-104. In my judgment this course of action would result in an unfair and unnecessary waste of Maryland's judicial resources. As stated in the text of this letter, in order for me to entertain Batty's federal post-conviction action in light of his procedural default in not fully presenting evidence about the disposition of Gaskins' Baltimore County case in his State post-conviction proceeding, I must myself first make the very finding that I would be asking the Maryland courts to make under Section 7-104: that a *Brady* violation in fact occurred.